# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WENDELL W. CUMMINS, | Case No. 07-cv-00234 TAG |
| Plaintiff, | MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION |
| vs. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ORDER DIRECTING THE CLERK TO ENTER JUDGMENT FOR PLAINTIFF WENDELL W. CUMMINS AND AGAINST DEFENDANT MICHAEL J. ASTRUE AND TO CLOSE THIS CASE |
| Defendant. | |
| _____/ | |

Plaintiff Wendell W. Cummins ("Plaintiff" or "Claimant") seeks judicial review of an administrative decision denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 401 et seq., and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq. Pending before the Court is Plaintiff's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner"). Plaintiff filed his complaint on February 28, 2007 (Doc. 1), and his opening brief on October 25, 2007. (Doc. 20). The Commissioner filed his opposition to the appeal on November 15, 2007. (Doc. 22). On December 3, 2007, Plaintiff filed his reply brief. (Doc. 23).

Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties consented to proceed before a United States Magistrate Judge, and, by an order dated April 3, 2007, this action was assigned to the United States Magistrate Judge for all further proceedings. (Doc. 14).

## **JURISDICTION**

On June 4, 2003, Plaintiff protectively filed for DIB and SSI, alleging an onset date of June 4, 1999. (AR 420). On June 10, 2003, Plaintiff filed separate applications for DIB and SSI

(collectively, "the applications"), which were treated as concurrent cases.[1]  (AR 67-70, 421-424; see e.g., AR 34, 425).  Plaintiff's applications were denied initially and on reconsideration.  (AR 23-41, 42-45, 48-52, 425, 426).

After timely requesting a hearing, Plaintiff, his mother, and his counsel appeared before Administrative Law Judge ("ALJ") James P. Berry on March 21, 2006.  (AR 53, 427-452).  On May 25, 2006, the ALJ issued a written decision finding that Plaintiff was not disabled.  (AR 10-55).  The Appeals Council denied Plaintiff's request for review on December 29, 2006.  (AR 5-7).  The Appeals Council's decision, therefore, became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  The initiation of an appeal in the district court must be commenced within sixty (60) days of the Appeal Council's decision.  42 U.S.C. § 405(g).  On March 7, 2006, Plaintiff timely filed this action.  (Doc. 1).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs filed by Plaintiff and the Commissioner, and, therefore, will only be summarized here. In his DIB and SSI applications, Plaintiff alleged that he could not work because he suffered from epileptic grand mal seizures and an enlarged heart.  (AR 67, 421).

At the March 21, 2006 hearing, Plaintiff testified that he was born in 1956, making him 49 years old at the time of the hearing and 50 years old when the ALJ issued his decision.  (AR 430-431).  Plaintiff testified that he completed a class in vocational mechanics after graduating from high school, but has not worked as a mechanic. (AR 431-432).  Plaintiff testified that he received Social Security disability benefits for epilepsy from 1980 to 1998, but did not remember why he stopped receiving such benefits.  (AR 433).  He testified that he lived with his parents and had no current source of income.  (AR 430-431).

Regarding his work history, Plaintiff testified that he has held two jobs in the last fifteen years.  (AR 433).  He testified that his last job was a full-time security guard, which he held for nine

---

[1] It appears that Plaintiff signed part or all of his DIB application on June 2, 2003, and the state agency received and filed it on June 10, 2003.  (AR 67, 70).  In his DIB application, Plaintiff alleged an onset date of November 2001. (AR 67).

months from approximately March to November 2000. (AR 432). Plaintiff' described his security duties as driving to approximately ten leases, "checking on them and making sure that there was nobody present that wasn't supposed to be there." (Id.). Plaintiff testified that he was terminated because he lost his drivers' license after overdosing on his medication. (Id.). Plaintiff also testified that prior to his position as a security guard, he obtained a job through a friend in a rental tool company, where he operated pipe cleaning equipment. (AR 432-433). According to Plaintiff, he lost his job at the rental tool company after his friend's job there was terminated. (AR 433).

Regarding his medical impairments, Plaintiff testified that he could not work because he suffers from epileptic seizures, arthritic pain in his back, hips, knees, joints, toes, elbows, shoulders, and fingers, and failing memory. (AR 434). He added he was diagnosed as suffering from carpal tunnel syndrome and advised to see a primary care physician. (AR 435). Plaintiff testified that he has a congenital hole in his heart, which prevents sufficient oxygen from reaching his heart, prevents him from exercising "like a normal person," and causes him to turn blue and feel dizzy. (AR 435-436). Plaintiff further testified that he has a stent in one of his cardiac arteries, cannot walk sixty feet without becoming short of breath, suffers from acid reflux disease, and has daily headaches. (AR 436-438).

According to Plaintiff, the medications prescribed for his seizures are Tegretol, Keppra, and Dilantin, which were prescribed by his treating physician, Dr. Panata. (AR 437). Plaintiff also testified that he takes Quinine Sulfate[2] for his arm and leg cramps, which occur when he stands or uses his arms for a long time. (AR 434-435). He explained that he frequently uses an Albuteral inhaler to alleviate his shortness of breath. (AR 436). Plaintiff's doctor told him to take one aspirin daily, but he can take more when he has a headache. (AR 437-438). Plaintiff reported that, although he takes his medicine as prescribed, he had a seizure as recently as four weeks earlier. (AR 437, 443). Plaintiff further testified that he does not presently take any pain medicine, but recently saw a doctor and hoped the doctor would prescribe said medication at his follow-up appointment. (AR

---

[2] Although Quinine Sulfate is prescribed to treat and prevent nocturnal recumbency leg cramps, the FDA has not approved its use for this purpose. The medication is approved as an alternative treatment for malaria. See http://www.drugs.com/ppa/quinine-sulfate.html, visited on September 10, 2008.

3

1  434).  When questioned about the side-effects of his medications, Plaintiff reported that his
2  prescribed seizure medications cause him to feel dizzy and tired.  (AR 437).  He added that his loss
3  of memory and the feeling that his "head just doesn't feel right" started when he began taking his
4  medications.  (AR 438).  Plaintiff complained that, at the same time, he began to feel as though he
5  was losing his balance when walking.  (AR 439).  Overall, he stated that his condition had worsened
6  in the past two years due to the increase in his medications.  (AR 442-443).

7       As to Plaintiff's exertional capabilities, although it is not clear to what extent his limitations
8  stem from the side effects of his medications, cannot walk sixty feet without becoming short of
9  breath cannot walk sixty feet without becoming short of breath (AR 439).  He stated that he cannot
10 walk very far due to his shortness of breath and his medicine-related loss of balance.  (Id. ).  Plaintiff
11 further testified that he cannot sit for more than thirty minutes due to his back pain.  (AR 440).  In
12 addition, he has problems gripping with both hands that severely affects his ability to hold anything.
13 (Id.).  Plaintiff testified that he is unable to lift more than five pounds because his hips start to hurt.
14 (Id.).  He added that he cannot bend over to pick up or put down objects, but can carry the objects
15 when he is standing.  (Id.).  Plaintiff reported that he is uncomfortable in any position and does not
16 sleep well.  (AR 441).

17      With respect to Plaintiff's daily activities, he testified that, if he needs to go anywhere, he
18 takes the bus.  (AR 441).  Plaintiff further testified that he generally stays at home and watches
19 television shows.  (Id.).  When questioned further about how he spends his time, Plaintiff testified
20 that he tries to read to pass the time, but forgets a lot of what he reads.  (AR 442).  Plaintiff stated
21 that he tries to help his mother with household chores, such as vacuuming, and mows the lawn once
22 in a while, but then explained that he "ha[sn]'t done it for quite a while" because he has "been really
23 busy and [his] legs have been hurting."  (Id.).  Plaintiff testified that he has no hobbies and, since he
24 moved in with his parents, he no longer has friends with whom he can socialize.  (Id.).

25      Clara Cummins ("Ms. Cummins"), Plaintiff's mother, testified that Plaintiff had lived with
26 her for ten years.  (AR 444).  Ms. Cummins added that Plaintiff had seizures, and she witnessed his
27 last one about four weeks before the hearing.  (AR 444-445).  Ms. Cummins testified that Plaintiff
28 suffers light seizures "maybe once every two months" and that he during a seizure, he often stumbles

but does not often fall. (AR 445-446). Ms. Cummins testified that Plaintiff takes his medication as prescribed, but has also forgotten to take his medication "once in a while." (AR 446). Ms. Cummins testified that she thinks Plaintiff's medicine causes him to have blurred vision because he shakes his head while reading, stating that his eyes are not focusing or he has blurred vision. (AR 446-447). Ms. Cummins testified that Plaintiff suffers headaches and has a heart condition. (AR 447). She testified that when Plaintiff was fifteen years old, he was involved in a car accident during which he hit his head and remained unconscious for twenty-one days. (AR 447-448). According to Ms. Cummins, Plaintiff then underwent therapy to learn to talk, eat, and move, and has had ongoing problems with his hands as a result of the accident. (AR 448). Ms. Cummins opined that Plaintiff's condition has worsened over the years. (AR 449).

Vocational expert Kenneth Ferra ("VE") also testified at the administrative hearing. (AR 449-451). The ALJ asked the VE two hypothetical questions. His first question was whether a 49-year-old individual with a 12th grade education and past relevant experience as a pipe cleaner and a security guard, who had multiple severe impairments and a residual functional capacity ("RFC") to lift and carry twenty (20) pounds occasionally; ten (10) pounds frequently; stand, walk, and sit for six (6) hours; and must avoid exposure to unprotected heights and dangerous moving machinery, could perform either of Plaintiff's past work. (AR 450) The VE responded that the individual would be able to perform the security guard job, which was light and semi-skilled work. (Id.). The VE added that, if the ALJ considered the security guard's required driving as "exposure to dangerous moving machinery," the individual would not be capable of performing the job, adding that he did not categorize the driving as involving that exposure. (AR 450-451).

The ALJ's second hypothetical question to the VE was whether an individual with the same age, education, combination of impairments, and past relevant work history, who had the RFC to lift and carry five (5) pounds; stand, walk, and sit less than two (2) hours; had problems bending, gripping, and grasping; became dizzy after taking his medications; and found it difficulty to remember recent and remote facts, could perform either of Plaintiff's 's past jobs. (AR 451). The VE testified that, with these limitations, the individual would not be able to perform Plaintiff's past relevant work or any other job. (Id.).

5

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). The Court must uphold the Commissioner's decision to deny benefits, made through an ALJ, when the decision is based on the proper legal standards and is supported by substantial evidence. Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005). Substantial evidence is more than a mere scintilla but less than a preponderance. McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989) (quotations omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Webb, 433 F.3d at 686, citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971). Moreover, such "inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" are accorded the same consideration as is substantial evidence as defined above. Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (quotation and citation omitted).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400, 91 S.Ct. at 1426-1427. If the evidence supports more than one rational interpretation, the Court must uphold the decision of the ALJ. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). Moreover, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that would support a finding of either disability or non-disability, the Commissioner's decision is conclusive. Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987).

## RELEVANT LEGAL FRAMEWORK

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides

that a Plaintiff shall be determined to be under a disability only if her impairments are of such severity that the Plaintiff is not only unable to perform her previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

**Sequential Evaluation Process**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c).

If the Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the Plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from doing work performed in the past. If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot perform this work, the fifth and final step in the process determines whether he is able to perform other work in the national economy in view of his age, education and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). See Bowen v. Yuckert, 482 U.S. 137, 107 S.Ct. 2287 (1987).

The initial burden of proof rests upon a claimant to establish a prima facie case of entitlement to disability benefits. Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971). In terms of the five-step sequential evaluation process, the Ninth Circuit has held that "[t]he burden of proof is on the claimant as to steps one to four," while at the same time noting that an ALJ's *affirmative duty* to assist a claimant to develop the record . . . complicates the allocation of burdens" such that "the ALJ

shares the burden at each step." Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999) (italics in original). The initial burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ADMINISTRATIVE FINDINGS

As an initial matter, ALJ Berry noted that Plaintiff previously collected disability benefits but did not adjudicate the agency's decision to stop paying him benefits. (AR 12). Accordingly, Acquiescence Ruling ("AR") 97-4(9)[3] applied, which required the ALJ to apply a presumption of continuing non-disability from February 21, 1999 through the date of his decision unless Plaintiff rebutted the presumption with evidence of "changed circumstances." (AR 12-13). Because Plaintiff's age category changed, and he produced evidence that altered his RFC, the ALJ concluded that Plaintiff rebutted the presumption of non-disability.[4] (AR 12-13); see 20 C.F.R. §§ 404.1563 and 416.963.

At step one, the ALJ found that, during the time relevant to his decision, Plaintiff had not engaged in substantial gainful activity. (AR 15). At step two, the ALJ determined that Plaintiff suffered from a seizure disorder and cardiomyopathy,[5] which were severe impairments. (Id.).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that were among those acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity, and, therefore, he did not meet or equal a listing under 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Id.).

---

[3] AR 97-4(9) was adopted in response to Chavez v. Brown, 844 F.2d 691 (9th Cir. 1988), and explains how the holding in Chavez is to be applied, noting that it is applicable only to 9th Circuit cases. See AR 97-4(9), 1997 WL 742748. Acquiescence Rulings "are binding on all components of the Social Security Administration," and accorded deference by a reviewing court. 20 C.F.R. § 402.35(b); McNabb v. Barnhart 340 F.3d 943, 944 (9th Cir. 2003).

[4] The ALJ also determined that, based on Claimant's earnings, he was insured through March 31, 2005.

[5] A diagnosis of cardiomyopathy is used to describe a disease of the myocardium (the middle layer of the heart consisting of cardiac muscle) of unknown etiology.

1    ALJ Berry determined that there was no medical indication that Claimant's seizures resulted
2    from "factors beyond his control or to noncompliance with prescribed therapy." (Id.). The ALJ
3    further found that the medical evidence showed that Claimant's heart-related problems did not
4    preclude him from engaging in physical activity and that his chest pain appeared to be the result of
5    esophagitis due to gastroesophageal reflux disease rather than to his heart condition. (Id.).
6    The ALJ ascertained that Claimant retained the RFC to lift and carry twenty pounds
7    occasionally and ten pounds frequently and to sit, stand, and/or walk for six hours daily, but that he
8    must avoid exposure to unprotected heights and dangerous moving machinery. (AR 17). ALJ Berry
9    found that Claimant's impairments could cause the symptoms to which he testified, but that the
10   record is inconsistent with Claimant's allegations regarding the intensity, limitations, and duration of
11   the symptoms. (AR 17-18). The ALJ further noted that Claimant's daily activities as set forth in
12   written reports indicate that his symptoms were not as limiting as he alleged. (AR 18; see AR 97-
13   101). ALJ Berry stated that he afforded great weight to the opinion of Claimant's treating physician,
14   who reported that Claimant could work with some restrictions, and controlling weight to the opinion
15   of the state agency medical consultants, who opined that Claimant was able to work with seizure-
16   related precautions. (AR 18).
17   At step four, ALJ Berry, relying on the testimony of VE Ferra, found that Claimant could
18   return to his past relevant work as a security guard. (AR 18). The ALJ noted that, according to the
19   Dictionary of Occupation Titles ("DOT"), this job is considered semi-skilled, light work, which,
20   given Claimant's RFC, he could perform. (AR 18-19). Accordingly, the ALJ concluded that
21   Claimant was not disabled and, thus, not eligible for benefits under Title II or Title XVI of the Act.
22   (AR 19).

**ISSUES**

Plaintiff's opening brief presents a single issue: whether the ALJ properly assessed the
evidence regarding Plaintiff's orthopedic complaints.

**DISCUSSION**

Plaintiff contends that the ALJ did not properly assess his testimony and the medical evidence
regarding his orthopedic complaints, including arthritic pain in his back, hips, knees, joints, toes,

9

elbows, shoulder, and fingers, arm cramps, balance difficulties, and difficulties bending, gripping, and lifting, and instead addressed only Plaintiff's seizure and cardiac disorders. (Doc. 20, pp. 3-6). Plaintiff contends that the ALJ erred in discounting his testimony regarding the pain and limitations he suffered, despite objective medical evidence proving that he had underlying impairments that could cause pain and prevent him from working. (Doc. 20, pp. 4-6; Doc. 23, p. 5). Plaintiff contends that the ALJ ignored his treating physicians' notes reporting Plaintiff's complaints and/or history of low back pain, degenerative joint disease, arthritis pain, headaches, spinal stenosis, and carpal tunnel syndrome. (Doc. 20, pp. 4-6). He argues that his subjective complaints should not have been ignored or discounted because they are supported by objective medical evidence, including CT scans of the lumbar spine and brain, a pulmonary function test, and an EEG and nerve conduction study. (Doc. 20, pp. 5-6). Plaintiff asserts that the ALJ failed, as a matter of law, to provide a "clear and convincing rationale" that explained why he discounted the testimony regarding his orthopedic impairments, which were supported by the medical record, and, accordingly, a remand was required for the payment of benefits or a new hearing. (Id. at 6; Doc. 23 at 5-6).

A. Plaintiff's subjective complaints

Plaintiff contends that the ALJ erred when he rejected Plaintiff's testimony about his symptoms and subjective limitations.

A two step analysis applies at the administrative level when considering a claimant's credibility. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. Id. at 1281-1282. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so. Id. at 1281. The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." Mersman v. Halter, 161 F. Supp. 2d 1078, 1086 (N.D. Cal. 2001) (quotations and citations omitted). ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); Social Security Ruling ("SSR") 96-7p

1  (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent
2  reviewers the weight the adjudicator gave to the individual's statements and reasons for that
3  weight").

4  An ALJ can consider many factors when assessing the claimant's credibility. See Light v. Soc.
5  Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). The ALJ can consider the claimant's reputation for
6  truthfulness, prior inconsistent statements concerning his symptoms, other testimony by the claimant
7  that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure
8  to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the
9  observations of treating and examining physicians. Smolen, 80 F. 3d at 1284; Orn v. Astrue, 495
10 F.3d 625, 638 (2007).

11 The first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's
12 condition could reasonably be expected to produce the pain or other symptoms alleged. Lingenfelter
13 v. Astrue, 504 F. 3d 1028, 1036 (9th Cir.2007). The ALJ found that Plaintiff had two severe
14 impairments, i.e., seizure disorder and cardiomyopathy. (AR 15). When making his finding as to
15 Plaintiff's RFC, the ALJ found that "[Plaintiff's] medically determinable impairments could
16 reasonably be expected to produce the alleged symptoms, but that the [Plaintiff's] statements
17 concerning the intensity, duration and limiting effect of these symptoms are not entirely credible."
18 (AR 17). This finding satisfied step one of the credibility analysis. Smolen, 80 F. 3d at 1281-1282.

19 Because the ALJ did not find that Plaintiff was malingering, he was required to provide clear
20 and convincing reasons for rejecting Plaintiff's testimony. Smolen, 80 F. 3d at 1283-1284; Lester v.
21 Chater, 81 F. 3d 821, 834 (9th Cir. 1996)(as amended). When there is evidence of an underlying
22 medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his
23 symptoms solely because they are unsupported by medical evidence. Bunnell v. Sullivan, 947 F. 2d
24 341, 343 (9th Cir. 1991); SSR 96-7. Moreover, it is not sufficient for the ALJ to make general
25 findings; he must state which testimony is not credible and what evidence in the record leads to that
26 conclusion. Dodrill v. Shalala, 12 F. 3d 915, 918 (9th Cir. 1993); Bunnell, 947 F. 2d at 345-346.

27 In this case, the ALJ made five credibility findings. The first one is found in the eighth
28 paragraph of section 4 of the ALJ's decision, and states:

"I find that the claimant's testimony in regard to the frequency and severity of his seizure activity was not entirely credible." (AR 16)

The second credibility finding is in the fourth paragraph of section five of the decision, and states:

"After considering the evidence of record, I find that claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible. (AR 17).

The ALJ's third reference to credibility is found in the sixth paragraph of section five of the decision, and states:

"Overall, the type, duration, frequency and sequelae of the claimant's alleged convulsive disorder, does not appear to be corroborated to the degree alleged." (AR18).

The ALJ's fourth and fifth references to credibility are found in the seventh paragraph of section five of the decision, which begins with a discussion of Plaintiff's history of cardiomyopathy and states:

"However, Claimant's claim of total disability appears overstated." (AR 18).

The ALJ's fifth reference states:

"Furthermore, the claimant's activities of daily living indicate he is more functional than alleged" and "[a]lthough these activities are not extensive, they indicate he is not as dysfunctional as alleged." (AR 18).

    1. <u>The first credibility finding</u>

The ALJ's first credibility finding provided clear and convincing reasons for rejecting Plaintiff's testimony. The ALJ specified which symptom testimony is not credible and he identified what facts in the records led to that conclusion. (AR 16-17). The Court finds no error in the ALJ's first credibility finding.

    2. <u>The second credibility finding</u>

The ALJ's second credibility is not as specific as his first one. The second finding alludes to "the alleged symptoms" and refers to "the claimant's statements concerning the intensity, duration and limiting effects of these symptoms." (AR 17). The ALJ failed to specify what symptoms and statements he did not fully credit. In an effort to determine what those symptoms and statements might be, the Court considers the balance of the ALJ's credibility analysis.

Section five of the decision contains nine paragraphs. The first three paragraphs refer to "all symptoms" and mention epilepsy, a heart condition, a stent placement, shortness of breath, seizure medications, seizures, and "limited activity." (AR 17). The fourth paragraph is the ALJ"s second credibility finding. The fifth paragraph discusses Plaintiff's daily activities and medications. (AR 18). The sixth paragraph discusses Plaintiff's alleged convulsive disorder, seizure history, and questionable medical compliance. As discussed supra, the sixth paragraph begins with the statement that "[o]verall, the type, duration, frequency and sequelae of the claimant's alleged convulsive disorder, do not appear to be corroborated to the degree alleged." (AR 18). It also states that "[a]s noted above," claimant has an unclear medical history of seizures, there is no corroboration of any recent seizure other than the testimony of Plaintiff's mother, and Plaintiff's medication compliance was questionable. (AR 18). The Court interprets the "as noted above" language to refer to the ALJ's discussion of the evidence supporting his first credibility finding.

### 3. The third credibility finding

In paragraph six, the ALJ discounts "overall" the type, duration, frequency, and sequelae of Plaintiff's convulsive disorder as not corroborated "to the degree alleged." (AR 18). In contrast, the first credibility finding discounted only Plaintiff's testimony regarding the frequency and severity of his seizures. It is difficult to ascertain which testimony the ALJ discounted by including "type" and "sequelae" in the second credibility finding. Plaintiff did not testify regarding the pathological origin of his seizures. More importantly, the ALJ failed to specify what *symptom* testimony was discounted in the third finding, even with the "as noted above" reference. (AR 18). This lack of specificity makes it impossible to determine whether the ALJ discredited all or only some of Plaintiff's subjective complaints. If the ALJ rejected or discounted only some of Plaintiff's testimony, he must specify what portions of the testimony were rejected or discounted. In either event, the ALJ is required to specify what facts in the record led him to the conclusion that Plaintiff's testimony was not credible. Smolen, 80 F. 3d at 1284. The decision fails to provide that information.

### 4. The fourth and fifth credibility findings

The ALJ's decision includes two additional credibility references, which are tantamount to credibility findings. The first one is found in the seventh paragraph of section five of the decision.

(AR 18). The paragraph begins with an acknowledgment that Plaintiff has a history of cardiomyopathy. The second sentence states: "[h]owever, Claimant's claim of total disability appears overstated." (AR 18). The ALJ explained his reasoning, noting that none of Plaintiff's treating physicians opined that Plaintiff was disabled due to a heart condition, and Plaintiff made a poor effort in an exercise test. (Id.). The ALJ also concluded that "claimant's activities of daily living indicate he is more functional than alleged." (Id.). He noted that Plaintiff is able to do self-care, take the bus, do household chores and some yard work, and could drive a car when he felt well. (Id.). The ALJ concluded the analysis by noting that "[a]lthough these activities are not extensive, they indicate [claimant] is not as dysfunctional as alleged." (Id.).

Again, it is impossible to determine from the ALJ's decision precisely which symptom testimony is not fully credible because the ALJ did not reference any portions of Plaintiff's testimony when he rejected the claim of total disability as overstated, or when he concluded that Plaintiff was more functional than alleged.

B. Conclusion

The ALJ's decision fails to specify which portions of Plaintiff's testimony were not credible and what evidence undermined Plaintiff's subjective complaints in four of five credibility findings. This lack of specificity makes it impossible to determine whether and why the ALJ rejected all or only portions of Plaintiff's subjective complaints, including those related to his documented history of orthopedic and arthritic impairments, degenerative joint disease, headaches, spinal stenosis, and carpal tunnel syndrome.

As Plaintiff alleges, the ALJ's decision fails to acknowledge that Plaintiff suffers from any of the foregoing impairments or that Plaintiff complained of pain and other symptoms associated with them, despite the fact that there is evidence of each of them in the medical records and that Plaintiff's complaints of pain and other subjective symptoms relating to them were the subject of his testimony. The ALJ's failure to address or even acknowledge Plaintiff's subjective complaints regarding these ailments suggests that the ALJ may have failed to consider them at all as unsupported by medically determinable impairments, or as a non-severe impairments. An ALJ is required to consider all of the limitations imposed by Plaintiff's impairments, including impairments that are not severe. SSR 96-

8p. Here, it is impossible to determine whether and to what extent Plaintiff's impairments were considered because not all of them were addressed in the ALJ's decision.

Based on the foregoing, the Court concludes that the Commissioner's decision was not supported by substantial evidence in the record and was not based upon the proper legal standards. In this case, further development is necessary for a proper determination to be made. Specifically, proper application of the two step analysis applicable to consideration of a claimant's credibility must be performed by the ALJ, as noted above.

### **ORDER**

Accordingly, the Court ORDERS that:

1. Plaintiff's social security complaint is GRANTED;

2. The matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further development of the record and further consideration, consistent with this decision, of Plaintiff's status as disabled, including whether his impairments are so severe as to preclude gainful activity, whether Plaintiff is capable of performing work he has performed in the past, and if required, whether on the basis of Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff can perform any other gainful and substantial work in the economy; and

3. The Clerk of Court is DIRECTED TO ENTER JUDGMENT for Plaintiff Wendell W. Cummins and against Defendant Michael J. Astrue and to close this case.

IT IS SO ORDERED.

Dated: **September 10, 2008**                                  **/s/ Theresa A. Goldner**
                                                              UNITED STATES MAGISTRATE JUDGE